**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| V. | : | MAGISTRATE NUMBER 25-MJ-634 |
| | : | |
| | : | |
| GONZALO HERNANDEZ-ROQUE | : | |

## ORDER

    **AND NOW**, this        day of         2025, in consideration of the

government's Motion for Stay and Revocation of the Magistrate Judge's Order of Pretrial

Release, Defendant's Opposition, and after holding a hearing on the matter, it is hereby

**ORDERED** that the government's motion is **DENIED**.

                                   **BY THE COURT:**

                                     _____

                                     **HONORABLE JOHN M. YOUNGE**
                                     United States District Court Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| | **:** | |
| **V.** | **:** | **MAGISTRATE NUMBER 25-MJ-634** |
| | **:** | |
| | **:** | |
| **GONZALO HERNANDEZ-ROQUE** | **:** | |

### DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION FOR REVOCATION OF THE MAGISTRATE JUDGE'S ORDER OF PRETRIAL RELEASE

Gonzalo Hernandez Roque, by and through his attorney Nancy MacEoin, Trial Unit Chief, Federal Community Defender Office for the Eastern District of Pennsylvania, requests that this Court deny the government's Motion for Revocation of the Magistrate Judge's Order of Pretrial Release.

Under the Bail Reform Act ("BRA") a prosecutor may move for detention at an Initial Appearance only if authorized by 18 U.S.C. § 3142(f). Section 3142(f) does not govern the standard applicable at a detention hearing—that standard is codified at § 3142(e); nor does it govern the factors to be considered at a detention hearing—which are listed in § 3142(g). Instead, § 3142(f) details the subset of cases in which the government or the Court may move for a detention hearing.

Section 3142(f) is comprised of two subsections. First, § 3142(f)(1) provides a finite list of crimes for which, if the defendant is so charged, the government is automatically entitled to a detention hearing. These crimes include crimes of violence, certain controlled substance offenses, and firearm possession charges. This list is distinct from the list of "presumption offenses" under § 3142(e), where there is a presumption of detention at a detention hearing.

Second, § 3142(f)(2) entitles the government to move for detention in a case that involves "a serious risk that such a person will flee [or obstruct justice]." To reach a detention hearing under § 3142(f)(2), there must be a heightened risk of voluntary flight. *See, e.g.*, *United States v. Himler*, 797 F.2d 156, 160 (3d

Cir. 1986); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988).

Because illegal reentry under 8 U.S.C. § 1326—the only charge Mr. Hernandez-Roque faces—is nowhere to be found in § 3142(f)(1), the only statutory basis for the government to move for detention is serious risk of flight under § 3142(f)(2). Indeed, that is what the government did in Magistrate Court. But critically, Mr. Hernandez-Roque has an ICE detainer. Should Your Honor affirm the Magistrate Court's order for pretrial release, Mr. Hernandez Roque would not be released, he would instead be transferred to ICE custody. This fact negates any possibility that he will "flee." § 3142(f)(2).

What constitutes "flee[ing]" is at the crux of this legal question; this Court need not go further than its plain meaning. To "flee," as uniformly stated in dictionary definitions, is an intent to avoid prosecution. *See Black's Law Dictionary* (9th ed. 2009) (defining "flee from justice" as "flight," and defining "flight" as "[t]he act or an instance of fleeing, esp. to evade arrest or prosecution" (citing *Streep v. United States*, 160 U.S. 128, 133 (1895))); *Oxford English Dictionary* (3d ed. 2000) (defining "flee" as "to take flight; to try to escape or seek safety by flight"). It is hard to surmise a definition of "fleeing" that would include being taken by a government agency, by force, against one's will.

For this reason, every appellate court to consider the issue has determined that "the presence of an ICE detainer and the threat of potential removal alone are not sufficient to deny

BRA pretrial release." *United States v. Soriano Nunez*, 928 F.3d 240, 245 n.4 (3d Cir. 2019).

And courts specifically perform this analysis at the Initial Appearance stage. *See, e.g.*, *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017) ("[A] risk of involuntary removal does not establish a 'serious risk that [the defendant] will flee' upon which pre-trial detention may be based. § 3142(f)(2)(A). Having failed to make the threshold showing required by § 3142(f), the government's detention motion fails at the first step of our analysis."); *see also United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015).

The government argued in magistrate court that transfer to ICE custody would lead to deportation before the disposition of the illegal reentry charges. Even if that were true, a risk of involuntary flight does not enter the § 3142(f)(2) calculus. Nor is a failure of coordination between agencies within the Executive Branch a reason to interpret the BRA against its plain text. Every court to have addressed this argument has found it roundly unavailing. *Ailon-Ailon*, 875 F.3d at 1338-39 ("The problem here is not that defendant will absent himself from the jurisdiction, but that two Article II agencies will not coordinate their respective efforts. It is not appropriate for an Article III judge to resolve Executive Branch turf battles."); *United States v. Mendoza-Balleza*, 420 F. Supp. 3d 716, 718 (E.D. Tenn. 2019) ("Government cannot satisfy its threshold burden . . . to show that there is a serious risk Defendant will flee. Therefore, the Court is not authorized to conduct a detention hearing. As long as Defendant remains in the custody of the executive branch, albeit with ICE instead of the Attorney General, the risk of his flight is admittedly nonexistent.").

Simply put, there is no "detainer" exception to the BRA. But such an exception is grafted onto 18 U.S.C. § 3142 when courts categorically deny bail where a defendant is subject to an

immigration detainer and has previously been ordered removed by an immigration judge. This denial of bail, in contravention of the BRA's basic principle of individualized assessment, holds as a matter of law that a defendant is deemed a serious flight risk based on the possibility that the federal government might elect to remove her from the United States rather than delay his removal to complete his criminal prosecution—circumstances beyond his control. The Court should decline the government's invitation to rewrite the BRA. The first canon of statutory construction is to start with the plain meaning of the text.

That the Executive Branch—specifically the United States Attorney's Office ("USAO") and United States Immigration and Customs Enforcement ("ICE")—holds all the cards cannot be overstated. When ICE refers an arrested non-citizen to the USAO, and the USAO charges that individual with illegal reentry, "exercise[s] of discretion ha[ve] been made." *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1131 (N.D. Iowa 2018). Cases like this one thus start "in apparent agreement as to the correct course of action, yet reach an insuperable conflict" when a defendant moves for bail. *Id.* (citing cases). But the agencies of the Executive Branch cannot use their failure to cooperate to eviscerate Mr. Hernandez-Roque's rights under the BRA. To obtain a detention hearing pursuant to 18 U.S.C. § 3142(f)(2)(A), the government must show that the defendant poses a serious risk of voluntary flight; a risk of involuntary removal by ICE does not meet that burden. When courts fail to perform the required statutory inquiry, they presume the detention of an entire class of defendants, a presumption the BRA neither prescribes nor tolerates.[1]

---

[1] In 2023, 28% of all federal criminal sentences involved immigration offenses, 71.1% of which involved illegal reentry. *See* U.S.S.C. Quick Facts, *Illegal Reentry Offenses*, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Illegal_Reentry_FY23.pdf (last accessed March 28, 2025). "Nearly every defendant charged with

Because this case does not fall within § 3142(f)(1) and the government has not met its evidentiary burden to establish Mr. Hernandez Roque is a serious risk of flight under § 3142(f)(2), *see Friedman*, 837 F.2d at 49, there is no basis to hold a detention hearing or to entertain the merits of the government's motion to detain Mr. Hernandez Roque. Accordingly, this Court should deny the government's motion and affirm the Magistrate Court's order of pretrial release, which would cause Mr. Hernandez Roque to be transferred to ICE custody.

## I.    Background

On March 17, 2025, Mr. Hernandez-Roque, having been previously removed from the United States to Guatemala, was administratively arrested by ICE in Montgomery County, Pennsylvania when he entered the courthouse to attend a hearing. After ICE notified the USAO of the arrest, the United States Marshal Service served Mr. Hernandez-Roque with a criminal complaint charging one count of illegal reentry, in violation of 8 U.S.C. § 1326(a), (b)(2), and took him into custody. An ICE detainer also was lodged against him.

On March 27, 2025, Mr. Hernandez-Roque appeared before the Honorable Pamela A. Carlos in United States Magistrate Court. After an initial appearance and appointment of counsel, Mr. Hernandez-Roque stipulated to probable cause but did not agree to stipulate to detention. Judge Carlos granted the government's request for three days to prepare for a detention hearing.

On March 31, 2025, the government filed a motion for pretrial detention. ECF No. 8. During Magistrate Court that day, the Honorable Jose R. Arteaga denied the government's

---

illegal reentry will have a prior order of removal that ICE will attempt to reinstate." *Villatoro-Ventura*, 330 F. Supp. 3d at 1131 (citing 8 U.S.C. § 1326). And even the 28.9% of immigration cases not involving illegal reentry likely involve immigration detainers and removal orders that implicate the same constitutional concerns involving the denial of bail. *See id.* at 1133-34, *id.* at 1134 n.18.

motion and granted Mr. Hernandez-Roque's pretrial release, finding that the government was not entitled to a detention hearing because Mr. Hernandez-Roque is not charged with an offense under 18 U.S.C. § 3142(f)(1) and the government failed to meet its burden under § 3142(f)(2). Judge Arteaga squarely rejected the government's contention that Mr. Hernandez-Roque poses a serious risk of flight due to his ICE detainer because "flight" requires volitional conduct. Judge Arteaga further opined that any conflict between Executive Branch agencies is not to be resolved by an Article III judge.

The government swiftly filed a Motion to Stay and Revoke the Magistrate Judge's Order of Pretrial Release, ECF No. 10, which Chief Judge Mitchell S. Goldberg granted in part, staying Judge Arteaga's order of release and detaining Mr. Hernandez Roque pending a hearing on the government's motion, ECF No. 11. Mr. Hernandez Roque remains in federal custody at the Philadelphia Detention Center.

## II.    Discussion

"Unless [the] right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Stack v. Boyle*, 342 U.S. 1, 4 (1951). And thus, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

Consistent with these principles, the Bail Reform Act generally directs that a person accused of a federal crime shall be released, either on personal recognizance or unsecured appearance bond, or on conditions. 18 U.S.C. § 3142(a)-(c). The Act authorizes detention only as an exception, after a hearing, and that hearing may be held only if (1) the government moves for detention in a case involving certain charges (not applicable here), 18 U.S.C. § 3142(f)(1), or (2)

the government or the judicial officer moves for detention in a case involving "a serious risk that such person will flee" or "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror," § 3142(f)(2); *see United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986) (because defendant's case did not involve any (f)(1) offenses nor obstruction of justice or intimidation, defendant could "be detained only if the record supports a finding that he presents a serious risk of flight").

The Act thus creates "a two-step process." *Ailon-Ailon*, 875 F.3d at 1336. At step one, the court must decide whether the government has shown, by a preponderance of the evidence, that it is entitled to a detention hearing under 18 U.S.C. § 3142(f)(1) or (2)—in this case, (f)(2) based on a serious risk Mr. Hernandez-Roque will flee. *See United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("§ 3142(f) does not authorize a detention hearing whenever the government thinks detention would be desirable, but rather limits such hearings to the [circumstances listed in (f)(1) and (f)(2)]."); *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988) ("[T]he structure of the statute and its legislative history make it clear that Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists."); *United States v. Hernandez Cerrato*, No. 23-419, 2024 WL 1329296, at *1 (D. Md. Mar. 28, 2024) ("[T]he threshold question is whether the Court may consider detention at all.").

If the court determines the government has met its burden at step one, the government must prove by clear and convincing evidence "at the second step of the process that there 'is no condition or combination of conditions' that 'will reasonably assure the [defendant's] appearance

8

. . . as required [as well as] the safety of any other person and the community.'" *Ailon-Ailon*, 875
F.3d at 1336 (quoting § 3142(e)); *see Salerno*, 481 U.S. at 752 ("The Government must prove its
case by clear and convincing evidence."). "In this context, 'reasonably assure' does not mean
guarantee." *Villatoro-Ventura*, 330 F. Supp. 3d at *1125.

  Here, Mr. Hernandez Roque was detained by ICE, which decided to alert the USAO of
his arrest and prior order of removal. After being taken into custody by the United States
Marshals, Mr. Hernandez Roque appeared in magistrate court, at which time the government
argued pretrial detention was warranted because his ICE detainer, his ties to Guatemala, and his
"history of willfully violating the law" demonstrates that he is a flight risk, and no condition or
combination of conditions will reasonably assure his appearance." Govt's Mot. for Pretrial
Detention, ECF No. 8. But due to the government's failure to submit any evidence that Mr.
Hernandez-Roque is likely to flee on his own volition, Judge Arteaga denied the government's
motion.

  In granting pretrial release, Judge Arteaga carefully followed the plain language of the
BRA that requires individualized assessment of the defendant in a two-step process, beginning
with § 3142(f). The magistrate court first considered the threshold question at step one: whether
the government was entitled to a detention hearing under § 3142(f). The answer was no, because
an ICE detainer alone does not satisfy the government's burden of showing "a risk that [the
defendant] will flee." 18 U.S.C. § 3142(f)(2)(A). While Mr. Hernandez-Roque's immigration
status is relevant to the BRA analysis, the ICE detainer, which *may* cause *involuntary* removal,
holds little if any weight. Beyond the detainer, the government presented scant evidence of Mr.

Hernandez-Roque's serious risk of flight. The magistrate judge's analysis correctly stopped at step one.

Even assuming the government satisfied its burden at step one, which it did not, it did not meet its burden at step two to establish that no condition or combination of conditions were available to reasonably assure Mr. Hernandez-Roque's appearance.

### A. The magistrate judge correctly ruled at Step One that removal is not "flight" and an ICE detainer does not prove a "serious risk of flight."

Because the government relied on flight risk in seeking a detention hearing, it was required to establish a "serious risk" that Mr. Hernandez-Roque "will flee." 18 U.S.C. § 3142(f)(2)(A). It failed to do so. The magistrate court correctly found that there is no categorical presumption of detention in the face of an ICE detainer. Indeed, Congress could have included illegal reentry offenses, almost all of which involve an ICE detainer, in the list of offenses that entitles the government to a detention hearing. *See* § 3142(f)(1). But Congress elected not to. Instead, judicial officers are required to conduct an individualized inquiry of a defendant at the threshold stage. And a proffer of an ICE detainer and allegation of imminent removal does not prove either that Mr. Hernandez-Roque "will flee," or that involuntary removal poses a "serious risk" of flight.

> 1. *"Flight" is volitional and cannot mean involuntary removal or deportation.*

At step-one, the Bail Reform Act does not authorize a detention hearing based solely on a risk that the defendant may be unable, for reasons beyond her control, to appear in court. Rather, the BRA requires a "serious risk" that the defendant "will *flee*." 18 U.S.C. §3142(f)(2)(A) (emphasis added). Removal does not constitute flight, because, as the plain meaning suggests, flight must be volitional.

While the BRA does not define "flee," the word ordinarily suggests an intent to "flee justice," that is, to intentionally evade prosecution. *See Black's Law Dictionary* (9th ed. 2009) (defining "flee from justice" as "flight," and defining "flight" as "[t]he act or an instance of fleeing, esp. to evade arrest or prosecution"); *Oxford English Dictionary* (3d ed. 2000) (defining "flee" as "to take flight; to try to escape or seek safety by flight"). The plain and unambiguous meaning of "flee" "support[s] the conclusion in this statutory context that a person who 'will flee' or who poses a serious 'flight risk' if released from detention pending trial will intentionally make himself or herself unavailable for prosecution." *Suastegui*, 2018 WL 3715765, at *4.

Consistent with this reading, courts are nearly unanimous in concluding that the references to flight and nonappearance in § 3142—in the case of ICE detainers or not— mean *volitional* flight and nonappearance. *See, e.g.*, *Ailon-Ailon*, 875 F.3d at 1337 ("We agree . . . that a risk of involuntary removal does not establish a 'serious risk that [the defendant] will flee' upon which pre-trial detention may be based."); *Santos-Flores*, 794 F.3d at 1091-92 ("[T]he risk of nonappearance referenced in § 3142 must involve an element of volition."); *United States v. Storme*, 83 F.4th 1078, 1083 (7th Cir. 2023) ("[T]he plain import of the term 'flight' connotes an intentional act by a defendant to evade criminal prosecution by leaving the jurisdiction. . . . The same goes for nonappearance. In the bail context, nonappearance refers to an attempt to avoid submitting to a court's jurisdiction[.]"); *Suastegui*, 2018 WL 3715765, at *4; *Stepanyan*, 2015 WL 4498572, at *3-4; *Trujillo-Alvarez*, 900 F. Supp. 2d at 1176-78 (discussing cases); *United States v. Clemente-Rojo*, No. 14-cr-10046, 2014 WL 1400690, at *3 (D. Kan. Apr. 10, 2014); *United States v. Villanueva-Martinez*, 707 F.Supp.2d 855, 857 (N.D. Iowa 2010); *Barrera-Omana*, 638 F. Supp. 2d at 1111; *United States v. Montoya-Vasquez*, No. 08-CR-3174,

2009 WL 103596 at *4 (D. Neb. Jan 13, 2009). Decisions otherwise, which tend to hold that preventing "nonappearance" arising from the government's constitutes a "risk of flight," "get[ ] the BRA analysis backwards." *Villatoro-Ventura*, 330 F. Supp. 3d at 1126; *see also Stepanyan*, 2015 WL 4498572, at *3 (discussing the "few district court cases that have settled upon a semantic loophole"—attaching "an odd non-volitional meaning to 'risk of flight'—"to wriggle out of the Bail Reform Act's clear strictures to treat [the defendant] like any other . . . in the course of making a bail determination" (citing *United States v. Campos*, No. 10–mj–6, 2010 WL 454903 (M.D. Ala. Feb. 10, 2010); *United States v. Lozano*, 2009 WL 3834081 (M.D. Ala. Nov. 16, 2009); *United States v. Ramirez–Hernandez*, 910 F. Supp. 2d 1155 (N.D. Iowa 2012)).

Because "flight" under § 3142 entails voluntary action, this Court must assess whether Mr. Hernandez-Roque poses a serious risk of flight without regard to the ICE detainer and allegation of imminent removal. *See United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1140 (D. Idaho 2023) ("Notably, the Court does *not* consider the prospect of the alien defendant's immigration detention or involuntary deportation if released from criminal custody." (citing *Santos-Flores*, 794 F.3d at 1092; *United States v. Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019)). The government did not meet its burden in demonstrating a heightened risk of flight. And the fact of the ICE detainer demonstrates that even if the government had presented reasons Mr. Hernandez-Roque would flee if released, those reasons would not come to fruition here, where it is undisputed that he will have no choice but to remain in Executive Branch custody.

    2.   *Because it failed to meet its burden to prove a serious risk that Mr.*
         *Hernandez- Roque would voluntarily flee, the government did not establish*
         *eligibility for a detention hearing.*

To meet its burden, the government "must demonstrate serious risk of flight by a preponderance of the evidence to trigger a detention hearing under § 3142(f)(2)(A)." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1138. To do so, it "must present concrete information not mere conclusory allegations." *Id.* (internal quotation marks and citations omitted); *see also Himler*, 797 F.2d at 160 (detention warranted "only if the record supports" a finding of "serious risk of flight"). That information must demonstrate that the defendant "poses a great risk that he or she will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1148.

In addition to relying on the ICE detainer, the government, in one sentence, asserted that Mr. Hernandez-Roque's ties to Guatemala and his history of violating the law warranted his pretrial detention. *See* Gov't Mot., ECF No. 8. These bare allegations failed to satisfy the government's burden and are categorically irrelevant at step-one since it is undisputed that Mr. Hernandez-Roque would be unable to flee even if he wanted to. What's more, the nature of the charged offense—illegal reentry—is evidence of Mr. Hernandez-Roque strong desire to remain in the United States. *See Figueroa-Alvarez*, 681 F. Supp. 3d at 1147 ("While the Government is correct that his reentries after these removals demonstrate Defendant's disregard for court orders, and his knowing flaunting of criminal immigration laws, they equally demonstrate his resolve to remain in Idaho and the United States.").

It is a "common misconception" that "alien defendants granted pretrial release are more likely to fail to appear or flee than defendants who are United States citizens or lawful residents." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1139.[2]  As the *Figueroa-Alvarez* aptly observed:

> Alien defendants who illegally enter this country, or illegally re-enter this country after removal, do so for many reasons: to flee political persecution in their home country, to flee drug-related violence in their home country, to pursue greater economic opportunity in this country, and to follow friends or family members who already live in this country, just to name a few. But they share a common trait: they voluntarily chose to come to this country and stay here. Presuming that they are any more likely than non-alien defendants to leave this country or the jurisdiction to avoid prosecution – just because they came here from another country – is misplaced.

*Id.* at 1139-40. Thus, to the extent Mr. Hernandez-Roque's immigration status is relevant to the § 3142 analysis, the Court must particularly assess how that factor bears on his

---

[2]  Critically, the empirical evidence shows just the opposite. "According to a March 2022 United States Department of Justice, Bureau of Justice Statistics, Special Report, alien defendants granted pretrial release were *less* likely to fail to appear or violate conditions of release than non-alien defendants." *Id.* at 1140 (citing https://bjs.ojp.gov/content/pub/pdf/prmfdcfy1118.pdf). Moreover, these defendants subject to removal are generally more compliant pretrial than U.S. citizen defendants:

> Collectively, for fiscal years 2011 through 2018, U.S. citizen defendants granted pretrial release (i) failed to appear at a rate of 0.9 percent; (ii) committed technical violations of conditions of release (*e.g.,* failed drug test or failure to maintain employment) at a rate of 20.0 percent; (iii) were rearrested for a new offense at a rate of 2.5 percent; and (iv) had their pretrial release revoked at a rate of 12.1 percent. *Id.* at Table 9. For the same period, documented non-U.S. citizen defendants (lawful permanent residents) granted pretrial release (i) failed to appear at a rate of 3.4 percent; (ii) committed technical violations of conditions of release at a rate of 12.6 percent; (iii) were rearrested for a new offense at a rate of 1.6 percent; and (iv) had their pretrial release revoked at a rate of 9.0 percent. *Id.* By contrast, for the same period, undocumented non-U.S. citizen defendants (alien defendants) granted pretrial release (i) failed to appear at a rate of 0.5 percent; (ii) committed technical violations of conditions of release at a rate of 1.6 percent; (iii) were rearrested for a new offense at a rate of 0.2 percent; and (iv) had their pretrial release revoked at a rate of 1.1 percent. *Id.*

*Id.*

individual risk of flight; any assumption of flight risk based on Mr. Hernandez-Roque's immigration status alone would be improper.

Because the government has failed to provide "concrete information" that Mr. Hernandez-Roque poses a great risk of intentional flight to avoid court proceedings, no detention hearing is warranted. *Id.* at 1148.

**B. The government's proffer of an ICE detainer cannot meet its burden at step two.**

      1. *There is no categorical presumption of detention under the BRA.*

The BRA does not withhold release eligibility from persons with ICE detainers or removal orders. *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019) ("[A]n immigration detainer cannot support the categorical denial of bail[.]"); *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) ("Congress chose not to exclude removable aliens from consideration for release or detention in criminal proceedings."). Such a categorical bar contravenes the plain language of the BRA, which specifically provides for procedures to be followed under such circumstances and demands individualized assessment of each defendant. *See Santos-Flores*, 794 F.3d at 1091-92 ("The court may not . . . substitute a categorical denial of bail for the individualized evaluation required by the BRA."); *United States v. Soriano Nunez*, 928 F.3d 240, 244-45 (3d Cir. 2019); *United States v. Brown*, No. 15-CR-102, 2017 WL 3310689, at *3 (D.N.D. July 31, 2017) ("[T]he Government's argument[ ] that defendant must be detained in order to ensure his attendance at trial because ICE will take him into administrative custody pursuant to its detainer and process him for removal if released, effectively denies him the[ ] statutory protections [of the BRA].").[3] That is, the individualized determination of release

---

[3] As the Ninth Circuit noted, a categorical bar against release based on ICE detainers and removal orders also "would raise constitutional questions." *Santos-Flores*, 794 F.3d at 1090 n.1.

or detention demanded under the BRA would be trumped by the ICE detainer and the fact that ICE may process the defendant. *See Santos-Flores*, 794 F.3d at 1091 ("[T]he government may not use its discretionary power of removal to trump a defendant's right to an individualized determination under the Bail Reform Act.").

The effective replacement of the judicial officer's meaningful independent bail decision with executive decision-making is not what the BRA contemplates. *See United States v. Delker*, 757 F.2d 1390, 1399 (3d Cir. 1985) ("[T]he characteristics that will support pretrial detention may vary considerably in each case, and thus Congress has chosen to leave the resolution of this question . . . to the sound discretion of the court's acting on a case-by-case basis."). Under the BRA, each defendant is a "person without distinguishment as to whether the person is a United States citizen, resident alien, visa holder, or an alien with no temporary or permanent immigration status." *Brown*, 2017 WL 3310689, at *3. Nowhere in the BRA did Congress authorize the automatic detention of a non-citizen with no temporary or permanent immigration status, even one subject to an ICE detainer. *See id.* In fact, "immigration status" is notably absent from the "factors that a court should consider in determining whether a particular defendant should be released under pretrial supervision or confined pending trial are set forth in 18 U.S.C. § 3142(g)." *Santos-Flores*, 794 F.3d at 1090. And Congress did not include unlawful reentry in its list of offenses for which detention is presumed in § 3142(e)(3), indicating that "removable aliens, as a category of defendants, do not inherently pose a heightened risk of flight." *United States v. Suastegui*, No. 18-MJ-00018, 2018 WL 3715765, at *4 (W.D. Va. Aug. 3, 2018) (citing *Ailon-Ailon*, 875 F.3d at 1138, *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1111 (D. Minn. 2009)).

16

Congress did, however, authorize the limited and temporary detention of non-citizen defendants who are not lawfully admitted and pose a danger or risk of flight in order "to permit . . . deportation." 18 U.S.C. § 3142(d). If ICE does not take custody of the person "during that [10-day] period," then that person "shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings." *Id*. Thus, other than during this temporary detention period, "Congress affirmatively extended to alien persons the same protections it affords citizens under the [BRA]." *Brown*, 2017 WL 3310689, at *3. Section 3142(d) therefore "demonstrates that a defendant 'is not barred from release [simply] because he is a deportable alien.'" *Ailon-Ailon*, 875 F.3d at 1138 (quoting *United States v. Adomako*, 150 F. Supp. 2d 1302, 1307 (M.D. Fla. 2001)).

Concluding that the "[g]overnment's ICE-detainer argument is at odds with the plain text of the Bail Reform Act" would break no new ground. *Brown*, 2017 WL 3310689, at *3. Many courts across the country have reach this conclusion. *See, e.g.*, *id*. (concluding that the "court would violate the Bail Reform Act if it detained defendant based only on the fact he is as alien and ICE has filed a detainer" and, in fact, "the court does not believe [the ICE detainer] is entitled to any weight"); *United States v. Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1133-34 (M.D. Fla. 2015); *United States v. Stepanyan*, No. 15-CR-0234, 2015 WL 4498572, at *1 (N.D. Cal. July 13, 2015); *United States v. Tapia*, 924 F. Supp. 2d 1093, 1097-98 (D.S.D. 2013) (citing cases); *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1174 (D. Ore 2012); *United*

*States v. Montoya-Vasquez*, No. 4:08cr3174, 2009 WL 103596, at *5 (D. Neb. Jan. 13, 2009);

*Barrera-Omana*, 638 F. Supp. 2d at 1111.[4]

  2.  *The government cannot meet its burden at step two.*

  Even if a detention hearing was warranted based on the government's showing of a

serious risk of flight (it was not), as at step one, the detainer and threat of removal cannot satisfy

the government's burden; otherwise "Congress's carefully crafted detention plan, set forth at 18

U.S.C. § 3142, would simply be overruled by an ICE detainer." *Barrera-Omana*, 638 F. Supp.

2d at 1111; *see Santos-Flores*, 794 F.3d at 1092 ("We conclude that the district court erred in

relying on the existence of an ICE detainer and the probability of Santos–Flores's immigration

detention and removal from the United States to find that no condition or combination of

conditions will reasonably assure Santos–Flores's appearance pursuant to 18 U.S.C. §

3142(e)."); *Suastegui*, 2018 WL 3715765, at *1 ("[T]he risk that a person facing prosecution for

unlawfully entering the United States in violation of 8 U.S.C. § 1326(a) will be deported before

trial, without more, does not authorize the Court to detain that person under the Bail Reform Act

on grounds that he or she poses a serious flight risk and that no conditions of release can

reasonably assure his or her appearance as required at trial.").

  At step two, the government must establish, by clear and convincing evidence, that there

are no conditions that could reasonably assure Mr. Hernandez-Roque's appearance and the safety

of any other person and the community. 18 U.S.C. § 3142(e)(1). For the reasons articulated

above, the government cannot do so.

---

[4] In some districts, the government, in fact, agrees that an ICE detainer or removal order cannot solely justify pretrial detention based on the statutorily mandated individualized analysis. *See, e.g.*, *Ibarra*, 2025 WL 27474, at *2 (noting parties' agreement "that an ICE detainer or removal order cannot, by itself, justify pretrial detention").

Many similarly situated defendants have been released pre-trial, subject to conditions that have adequately assured the defendant's future appearance should ICE have decided not to take the defendant into custody. *See, e.g.*, *Suastegui*, 2018 WL 3715765, at *1; *United States v. Blas*, No. 13-178, 2013 WL 5317228, at *7 (S.D. Ala. Sept. 20, 2013); *Trujillo-Alvarez*, 900 F. Supp. 2d at 1174; *United States v. Villanueva-Martinez*, 707 F. Supp. 2d 855, 858 (N.D. Iowa 2010); *United States v. Montoya-Vasquez*, No. 4:08cr3174, 2009 WL 103596, at *5 (D. Neb. Jan. 13, 2009); *Barrera-Omana*, 638 F. Supp. 2d at 1111; *United States v. Rembao-Renteria*, No. 07-MJ-399, 2007 WL 2908137, at *3 (D. Minn. Oct. 2, 2007).

### C. Even if deportation could be equated with flight or nonappearance (which it cannot), Mr. Hernandez-Roque's removal is too speculative to be considered under § 3142(f) or (e).

The government argued before the magistrate court that Mr. Hernandez-Roque's pretrial release would guarantee his non-appearance because ICE definitively will deport him. That is simply not true. Whether a defendant "is in the custody of the Attorney General as he wears his U.S. Marshals Service hat, or as he wears his INS hat," the defendant's appearance at trial in such circumstances is entirely within the government's control. *Adomako*, 150 F. Supp. 2d at 1308. A district court deciding whether a defendant should be detained pretrial, therefore, cannot "speculate as to what may or may not happen in the future to the defendant under a different statutory and regulatory regime." *Diaz-Hernandez*, 943 F.3d at 1199.

True, ICE has a statutory obligation to remove a person subject to a removal order. *See* 8 U.S.C. § 1231(a). But despite the mandates of § 1231(a), removal is not automatic. *See Santos-Flores*, 794 F.3d at 1091 ("Reinstatement of a prior order of removal is neither automatic nor obligatory."). As the Ninth Circuit explained:

19

> ICE may decide to forego reinstatement for a variety of reasons, including but not limited to the exercise of prosecutorial discretion. The government may also exercise its judgment that the public interest in criminally prosecuting an alien is greater than the public interest in swiftly removing him. The government may, therefore, elect to deliver the alien to the United States Attorney's Office for prosecution, as it did here, instead of removing him immediately pursuant to 8 U.S.C. § 1231(a)(5). Having made this choice, however, the government may not use its discretionary power of removal to trump a defendant's right to an individualized determination under the Bail Reform Act.

*Santos-Flores*, 794 F.3d at 1091 (citations omitted); *see also Arizona v. United States*, 567 U.S. 387, 396 (2012) ("A principal feature of the removal system is the broad discretion exercised by immigration officials," including "whether it makes sense to pursue removal at all.").

In line with *Santos-Flores*, many district courts have concluded "that there is no irreconcilable conflict" between the statutory commands from Congress, "either because ICE has discretion as to whether it must proceed in the first instance or because there are mechanisms for the granting of a stay or deferral of removal if requested by government prosecutors, so that the presence of an ICE-detainer is not conclusive." *Brown*, 2017 WL 3310689, at *5 (citing cases); *Villatoro-Ventura*, 330 F. Supp. 3d at 1130 (noting ICE discretion to stay removal under 8 U.S.C. § 1231(c)(2)(A) and need for "consent of the appropriate prosecuting authority" to remove individual "whose departure would be 'prejudicial to the United States'" (citing 8 C.F.R. § 215.1, 215.3(g)); *Clemente-Rojo*, 2014 WL 1400690 at *3 (finding little flight risk posed by ICE detainer: "As pointed out by defendant, ICE is an agency within the Department of Justice. And, as pointed out by government counsel, ICE will do what DOJ (through the AUSA) tells it to do."); *Resendiz-Guevara*, 145 F. Supp. 3d at 1135-36 (court "is not convinced by" government argument that "DHS was mandated to remove Defendant within 90 days" because Attorney Discretion has discretion to stay removal under 8 U.S.C. § 1231(c)(2)(A)(ii) and "Section 215.2

of the INA authorizes a departure-control officer to temporarily prevent an alien's departure");
*see also Villatoro-Ventura*, 330 F. Supp. 3d at 1129 (noting that "several courts addressing this
issue have determined that the 90 day removal period does not commence until the alien is
released "from confinement" under 8 U.S.C. § 1231(a)(1)(B), which includes the conditions of
supervision imposed upon a defendant released pretrial under the BRA (citing *United States v.
Castro-Inzunza*, No. 12-30205, 2012 WL 6622075, at *1 (9th Cir. July 23, 2012)); *Trujillo-
Alvarez*, 900 F. Supp. 2d at 1174-75)).[5] The government failed to point to any authority
otherwise. *See Brown*, 2017 WL 3310689 at *6 ("[D]espite all of its arm-waving about ICE
proceeding to remove the defendant, the Government has not bothered to cite to one federal
statute or regulation that it contends *requires* ICE to remove him *with no exceptions* and his
criminal prosecution be damned.") (emphasis in original)); *Resendiz-Guevara*, 145 F. Supp. 3d at
1136 ("In light of Section 215.3(g) and that initially there was cooperation between ICE and the
U.S. Attorney's office here, the Court believes that the Government must show why it lacked the
ability to prevent Defendant's departure through a stay or departure control, which it failed to do
in the instant case.").

---

[5] The district court in *Blas*, for example, found that by adopting regulations favoring criminal
prosecutions, "the Executive Branch . . . has made the determination that a criminal proceeding takes
priority over removal and deportation." 2013 WL 5317228, at *7 (quoting *Trujillo-Alvarez*, 900 F. Supp.
2d at 1178-79). In that case, the court filed an order clarifying the status and effect of the defendant's
release order: "Should the Executive Branch attempt to take Blas into custody again on the basis that the
coordinated agencies now desire to deport him, in contravention to the clear priority those agencies have
given to the criminal prosecution . . . it will become necessary to convene a contempt hearing." *Id.*
Similarly, in *United States v. Adomako*, the court directed that "at all times that Adomako remains in the
custody of the Attorney General (in his capacity as head of the United States Marshals Service, the INS,
or both) pending trial, Adomako shall be . . . delivered to the United States Marshal for appearance in this
Court as required." 150 F. Supp. 2d 1302, 1308 (M.D. Fla. 2001).

Given the options available to the government, a proffer of nothing more than an ICE detainer cannot be said to sustain the government's burden of proving either a serious risk of flight or that there are no conditions capable of reasonably assuring Mr. Hernandez-Roque's appearance.

### III.    Conclusion

"If Congress wanted to bar aliens with immigration detainers from eligibility for release, it could readily have said so, but did not." *United States v. Villanueva-Martinez*, 707 F. Supp. 2d 855, 858 (N.D. Iowa 2010). To the contrary, Congress demands a two-step individualized assessment of each defendant, regardless of her immigration status, at an initial appearance. To reach a detention hearing at step two, the government must first show the case involves a serious risk that the defendant will flee. The government's proffer of an ICE detainer in this case suggested a risk of involuntary removal, not flight. The Magistrate Court therefore, performing the required individualized inquiry under 18 U.S.C. § 3142(f), correctly refused to hold a detention hearing and did not reach step two.

Ultimately, it is up to the USAO and ICE "to determine whether it is more important to prosecute [Mr. Hernandez-Roque] for illegal reentry (after which they can resume removal proceedings), or expeditiously remove [him] from the country and risk dismissal of the indictment." *Villatoro-Ventura*, 330 F. Supp. 3d at 1123. Any failure among separate agencies in coordination or cooperation cannot be used to deprive Mr. Hernandez-Roque of his rights under the BRA.

Respectfully submitted,

/s/*Nancy MacEoin*
Assistant Federal Defender
Chief, Trial Unit

22

## <u>CERTIFICATE OF SERVICE</u>

I, Nancy MacEoin, Trial Unit Chief, Federal Community Defender Office for the Eastern

District of Pennsylvania, hereby certify that I filed the attached Entry of Appearance via the

Court's Electronic Filing (ECF) system, which sent notification to Robert W. Schopf, Assistant

United States Attorney, Suite 1250, 615 Chestnut Street, Philadelphia, Pennsylvania 19106.


<u>/s/*Nancy MacEoin*          </u>
Assistant Federal Defender
Chief, Trial Unit

DATE:  April 1, 2025