# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| v. | : | CRIMINAL NO. 25-cr-148 |
| GONZALO HERNANDEZ-ROQUE | : | |

## GOVERNMENT'S CHANGE OF PLEA AND SENTENCING MEMORANDUM

**I.  INTRODUCTION**

Defendant Gonzalo Hernandez-Roque is charged in a one count indictment, with unlawfully re-entering the United States after being deported, in violation of 8 U.S.C. § 1326(a). The defendant, a native and citizen of Guatemala, was removed from the United States on July 7, 2016. Hernandez-Roque was subsequently found in the United States on or about March 17, 2025, having unlawfully reentered the United States without first applying for admission to the Attorney General of the United States or his successor, the Secretary of Homeland Security.

**II.  ENTRY OF GUILTY PLEA**

Defense counsel has represented that the defendant wishes to plead guilty pursuant to a plea agreement, attached as Exhibit A, and be sentenced immediately thereafter. To that end, the defendant signed a written consent form agreeing to a modified pre-plea presentence memorandum in this case. A change of plea and sentencing hearing is scheduled for June 17, 2025, in Allentown, Pennsylvania.

**III.  PLEA AGREEMENT**

The defendant is entering a plea of guilty to the one count in the information, and the government will recommend a sentence at the low-end of the Guideline range.

1

## IV. ESSENTIAL ELEMENTS OF THE OFFENSE

Title 8, United States Code, Section 1326 provides the following in pertinent part:

(a) [A]ny alien who –

    (1)    has been denied admission, excluded, deported, or removed . . . and thereafter

    (2)    enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission . . .

[shall be guilty of an offense].

To prove a violation of 8 U.S.C. § 1326(a), the government must prove the following essential elements:[1]

1. The defendant is an alien;[2]

2. The defendant was deported;

3. Defendant thereafter entered, attempted to enter, or was found in the United States; and

4. Defendant did so without having obtained permission from the Attorney General to reapply for admission.

See United States v. Flores-Peraza, 58 F.3d 164, 166 (5th Cir. 1996); United States v. Ortiz-Lopez, 24 F.3d 53, 55 (9th Cir. 1994).

---

[1] Section 1326 sets forth a general intent crime and the government need only prove that an alien's act of entering the United States was voluntary. Voluntariness and general intent to enter the country can be inferred from the alien's presence in the United States and need not be alleged in the indictment. United States v. San Juan-Cruz, 314 F.3d 384, 390 (9th Cir. 2002); United States v. Berrios-Centeno, 250 F.3d 294, 299-300 (5th Cir. 2001).

[2] The term "alien" means any person not a citizen or national of the United States. 8 U.S.C. § 1101(a)(3).

2

## V. FACTUAL BASIS FOR THE PLEA

If the case were to proceed to trial, the government would introduce evidence which would establish the following:

On May 18, 2016, a United States Border Patrol ("USBP") agent encountered Hernandez-Roque, then 19 years old, near Rio Grande City, Texas. According to the Form I-213, Hernandez-Roque stated that he was a citizen and national of Guatemala who did not have any document that allowed him to enter, pass through or remain in the United States. He also admitted that he illegally crossed the border without being inspected by an immigration officer at a designated port of entry.

A USBP agent personally served Hernandez-Roque with a Notice to Appear ("NTA"), in which USBP officials ordered him to appear before an immigration judge to show why he should not be removed from the United States. On June 27, 2016, an immigration judge ordered Hernandez-Roque removed from the United States to Mexico. On July 7, 2016, Hernandez-Roque was removed from the United States via an ICE Air flight that departed from Alexandria, Louisiana. Immigration officials executed a Form I-205, Warrant of Removal/Deportation, in connection with Hernandez-Roque's removal/deportation and it contains Hernandez-Roque's name (last name listed as Hernandez-Roquez), photograph, alien number, signature, and a fingerprint. Before his removal, immigration officials served Hernandez-Roque with an I-294, Warning to Alien Ordered Removed or Deported, dated June 27, 2016, which contained the following warnings: (1) he was required to request and obtain permission from the Secretary of Homeland Security to reapply for admission to the United States following his removal; and (2) illegal re-entry was a crime under 8 U.S.C. § 1326, punishable by two to twenty years'

imprisonment.

At an unknown date and place after, the defendant reentered the United States sometime after July 7, 2016. On May 21, 2024, Hernandez-Roque was arrested by Doylestown Township Police and charged with Retail Theft and Receiving Stolen Property. Hernandez-Roque was released from custody before Immigration and Customs Enforcement ("ICE") officers could lodge a detainer.

On March 17, 2025, ICE administratively arrested Hernandez-Roque in Horsham, Pennsylvania, in the Eastern District of Pennsylvania. ICE officials served Hernandez-Roque with a Form I-871, Notice of Intent/Decision to Reinstate Prior Order. On March 25, 2025, United States Magistrate Judge Pamela A. Carlos signed a criminal complaint charging Hernandez-Roque with Illegal Reentry, in violation of 8 U.S.C. § 1326(a). On March 27, 2025, ICE officers arrested Hernandez-Roque on the criminal complaint.

A Senior Fingerprint Specialist from the Department of Homeland Security's Forensic Laboratory would testify that the fingerprint on the I-205 from his July 7, 2016 removal was a match to Hernandez-Roque's fingerprints taken by an ICE officer on March 7, 2025.

A representative of the United States Citizenship and Immigration Service ("USCIS") would testify that USCIS has no record of any application for permission for Hernandez-Roque to re-enter the United States.   At trial, this witness could authenticate a Certification of Non-Existence of Record, which would reflect that no record exists of an application by Hernandez-Roque for permission from the Secretary of Homeland Security to reenter the United States, has been obtained by USCIS.

## IV. SENTENCING

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, which support the recommended sentence in this case.

## VI. SENTENCING CALCULATION

### A. Statutory Maximum Sentence

The statutory maximum sentence is as follows: Count One, reentry after deportation, in violation of 8 U.S.C. § 1326(a)- two years' imprisonment, one year of supervised release, a $250,000 fine, and a $100 special assessment. The conviction will also likely provide an additional basis for deportation.

### B. Sentencing Guidelines Calculation

The Probation Office has correctly calculated the defendant's advisory sentencing guidelines range for imprisonment to be zero to six months. PSR at ¶ 41. This is based upon a total offense level of 4 and a criminal history category of I. A low-end of the guideline's range sentence is an appropriate disposition of the defendant's case for the reasons discussed herein.

## VI. ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence of imprisonment is one within the guideline range.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more

within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[3]

**Consideration of the 3553(a) Factors**

The defendant is a native and citizen of Guatemala, who was removed from the United States on July 7, 2016. Prior to this removal, immigration officials warned the defendant that: (1) he was prohibited from reentering the United States absent requesting and obtaining permission from the Secretary for the Department of Homeland Security to reapply for

---

[3] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (*quoting United States v. Navedo Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

7

admission to the United States following the removal; and (2) illegally re-entering the United States was a crime. Yet, these warnings and removal did not deter the defendant from illegally re-entering the United States again. Reentry after deportation is a serious immigration offense. The defendant disregarded the clear warnings he was given of the consequences of illegally reentering this country and chose to do so anyway. A sentence at the low-end of the Guidelines range would adequately account for the nature and circumstances of this offense as well as the history and characteristics of the defendant, in addition to the remaining § 3553(a) factors. The defendant's crime falls squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, § 3553(a)(1), counsels in favor of the guideline sentence.

The government notes that the defendant does not have a criminal history. 18 U.S.C. § 3553(a)(1) ("history and characteristics of the defendant"). A low-end guidelines range sentence is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). Border security is critically important to national security, and this country spends significant resources to that end. Every violation of our borders by an individual like the defendant, who re-enters this country without permission, takes a toll on our country's resources and makes us more vulnerable to those who are watching and may attempt the same conduct. As set forth above, the defendant, while illegally present in the United States, has failed to abide by its laws. A within-guidelines sentence would reflect the seriousness of the offense and would promote respect for the immigration laws that the defendant has violated.

The recommended sentence will provide the necessary deterrence to the defendant and will certainly protect society from the defendant at least for the period of time that he is in custody. Deterrence is paramount in this case. While the defendant will be removed from the United States following the service of his sentence in this case, his prior removal did not deter him from illegally re-entering the United States. Imposition of a low-end Guidelines sentence is necessary to deter this particular defendant from illegally re-entering the country.

While the sentencing guidelines are advisory, they remain the sole means available for assuring some measure of uniformity in sentencing. Reference to the guidelines, while carefully considering all of the 3553 factors and making an individualized assessment of the defendant, is the best available way to determine the sentences of similarly situated defendants.

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition of a low-end guideline range sentence of imprisonment.

## VIII. CONCLUSION

For these reasons, the government recommends that the Court impose a sentence of a low-end guideline range sentence, a fine, if any, as determined by the Court, and a $100 special assessment.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s/ Robert W. Schopf*
ROBERT W. SCHOPF
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Government's Change of Plea Memorandum was served by email upon:

Nancy MacEoin
Defender Assn of Philadelphia
Suite 540 W,
601 Walnut St.
Philadelphia, PA 19106

Date: June 16, 2025

*/s/ Robert W. Schopf*
ROBERT W. SCHOPF
Assistant United States Attorney